# In the United States Court of Federal Claims

No. 23-639
Filed: September 6, 2024†
Published: September 25, 2024

---

**RENEE COMET,**

        *Plaintiff,*

v.

**THE UNITED STATES,**

        *Defendant.*

---

*Faith D. Beckworth*, *Joel B. Rothman*, and *Layla Nguyen*, SRIPLAW, P.A., Atlanta, Georgia, for Plaintiff.[1]

*Hayley A. Dunn*, Trial Attorney, Commercial Litigation Branch, Civil Division, *Scott Bolden,* Director, and *Brian M. Boynton*, Principal Deputy Assistant Attorney General, United States Department of Justice, for Defendant.

## MEMORANDUM OPINION AND ORDER

**TAPP, Judge.**

    The United States moves for summary judgment, primarily arguing that the statute of limitations bars Plaintiff Renee Comet's ("Ms. Comet") copyright claims. (Defendant's Motion for Summary Judgment ("Def.'s Mot. for Summ. J."), ECF No. 27). The United States further argues that if jurisdiction exists, and if the Court ultimately determines liability against the United States, Ms. Comet's damages must be statutorily capped at $750. (*Id.*). Ms. Comet argues that issues of fact exist concerning whether infringement has occurred within three years of the

---

† This Opinion was originally filed under seal on September 6, 2024, (ECF No. 37). The Court provided parties the opportunity to review this Opinion for any proprietary, confidential, or other protected information and submit proposed redactions. In a Joint Status Report filed September 19, (ECF No. 40), the parties proposed redactions which the Court accepts. The sealed and public versions of this Opinion differ only to the extent of those redactions, the publication date, and this footnote.

[1] Faith D. Beckworth was counsel of record at the time of briefing. On August 28, Layla Nguyen was substituted as counsel of record. (ECF No. 36). Because Ms. Beckworth was counsel of record during briefing, her name appears first in the introduction.

Complaint, necessarily precluding summary judgment. (Plaintiff's Response to the Motion for Summary Judgment ("Pl.'s Resp."), ECF No. 29). Ms. Comet also asserts that 17 U.S.C. § 405(c) does not limit her recovery. (*Id.*). Ultimately, the Court agrees that a genuine issue of material fact exists as to Ms. Comet's reproduction rights under the Copyright Act but finds no genuine issues as to her rights to display and distribute. Furthermore, the Court finds partial summary judgment on the issue of statutory damages to be premature. Accordingly, the United States' Motion for Summary Judgment is denied.

## I.   Background

Ms. Comet asserts that she is a renowned photographer specializing in still life photography for advertising, packaging, digital content, cookbooks, and recipe videos. (Compl. at 1, ECF No. 1). Her style of photography involves the use of "exquisite lighting techniques, minimalist propping, and refreshingly uncomplicated backgrounds" that Ms. Comet asserts are "highly desirable" to her customer base. (*Id.*). Ms. Comet also claims her clientele consists of several high-profile companies and government agencies, including Food Network, Marriot International, the United States Postal Service, and the Internal Revenue Service. (*Id.* at 2–3). Several federal agencies allegedly used Ms. Comet's published photograph; this case involves use of her work by the United States Department of Agriculture ("USDA"). (*Id.*; *see generally* Def's. Mot. for Summ. J.).

The Almond Board of California ("ABC") is a representative of the United States government established to promote the research and marketing of almonds grown in the state of California. (Handling of Almonds Grown in California, 15 Fed. Reg. 4993–5007 (Aug. 4, 1950) (codified at 7 C.F.R. Part 981)). ABC sought a photographer to capture images of almonds that would highlight almond usage in certain recipes. (Def.'s Mot. for Summ. J. Ex. 15 (Deposition ("Dep.") of M. Mautz, ABC, Dec. 14, 2023) at 44:3–22, 102:25–103:20, ECF No. 27-15). Ms. Comet submitted a cost estimate of $█████ to photograph almonds for ABC. (Def.'s Mot. for Summ. J. Ex. 5 (Renée Comet Photography Estimate to Porter Novelli on behalf of ABC, March 23, 2010), ECF No. 27-5). ABC selected Ms. Comet for the photoshoot and paid $█████ towards the total cost prior to the shoot. (Def.'s Mot. for Summ. J. Ex. 15 (Dep. of M. Mautz, ABC, Dec. 14, 2023) at 103:16–105:6, ECF No. 27-15; *see also* Ex. 16 (Dep. of R. Comet, Plaintiff, Nov. 9, 2023) at 171:14–16, ECF No. 27-16). Ms. Comet submitted an updated invoice for $█████, minus ABC's deposit of $█████, and ultimately delivered 100 photographs to ABC, including the photo subject to this controversy. (Def.'s Mot. for Summ. J. Ex. 6 ("Invoice") at A75, ECF No. 27-6; *see also* Ex. 16 (Dep. of R. Comet, Plaintiff, Nov. 9, 2023) at 170:11–16, ECF No. 27-16).

### A.   *USDA's Use of the Work*

In February 2012, the USDA published an article titled "Infrared Heating: Hot Idea for Keeping Almonds Safe to Eat" ("February 2012 Article") in USDA's online magazine. (Def.'s Mot. for Summ. J. at 3). ABC gave the USDA permission to include one of Ms. Comet's photos ("the Work") in the article. (*Id.*). It is undisputed that no later than January 13, 2015, the USDA uploaded the Work onto its server and web content management system, Umbraco, and

2

published the February 2012 Article with the Work on its website.[2] (*Id.* at 4; Pl.'s Resp. at 5 ("On January 13, 2015, the Work was "published" again.")). The USDA later removed the Work from its February 2012 Article on December 20, 2021. (*Id.*).



(COMPL. AT 4).

In March 2018, the USDA would again use the Work in an AgResearch Magazine article entitled "Going Nuts Over Calories" ("March 2018 Article"). (*Id.* at 4). It is undisputed that no later than March 2018, the USDA uploaded the Work onto its server and web content management system, Umbraco, and published the March 2018 Article with the Work on its website.[3] The USDA removed the Work from the March 2018 Article on December 20, 2021. (*Id.*).

---

[2] *See Infrared Heating: Hot Idea for Keeping Almonds Safe To Eat*, United States Department of Agriculture AgResearch Magazine, https://agresearchmag.ars.usda.gov/2012/feb/almonds (last visited Sept. 6, 2024). (Def.'s Mot. for Summ. J. at 3). The United States asserts the reason for the three-year gap between 2012 and 2015 is not that the USDA first published these in 2015. Rather, the United States confirms that in "approximately 2014" USDA transitioned from its old content management system, SitePublisher 2.5, to Umbraco, the current content management system. During the transition all old data from SitePublisher 2.5 was lost and is currently unavailable, though the United States agrees that "it is likely that the USDA first uploaded the Work onto the server and published on the website in the February 2012 Article prior to November 20, 2014." (*Id.* Ex. 19 (Def.'s Am. Obj. and Resp. Pl.'s First Set of Interrog.), at 15, ECF No. 27-19); *see also Id.* Ex. 7 (Screenshot of Umbraco Audit Trail for February 2012 AgResearch Magazine Article, Infrared Heating: Hot Idea for Keeping Almonds Safe to Eat, at A78, ECF No. 27-7).

[3] *See Going Nuts Over Calories*, United States Department of Agriculture AgResearch Magazine, https://agresearchmag.ars.usda.gov/2018/mar/calories/ (last visited Sept. 8, 2024).

3

The USDA utilized the image again on the USDA-ARS's Image Gallery ("Image Gallery webpage") which indexes USDA images. (*Id.* at 4–5). It is undisputed that no later than March 2018, the USDA uploaded the Work onto its server and web content management system, Umbraco, and published the Work on one of its websites.[4] The United States alleges that on December 10, 2020, the Image Gallery webpage received an archive tag, but this did not republish the webpage, cause the Work to be reuploaded to the server, nor did it impact the page being publicly available. (*Id.* at 5). On October 19, 2021, the USDA unpublished the webpage in Umbraco, and made it unavailable for public viewing at that time. (*Id.*).

### B. The Start of Litigation

Ms. Comet purports to have discovered the use of her work on USDA's website around July 15, 2020. (Compl. at 5). On May 3, 2023, Comet initiated legal action alleging that USDA infringed on her exclusive rights to reproduce, display, and distribute the Work. (*Id.* at 8). Ms. Comet alleges that these three instances where the USDA "upload[ed] the Work to its server," as evidenced by the webpages, constitute infringements of the right to reproduction. (*Id.* at 6 (citing 17 U.S.C. § 106(1))). Ms. Comet also alleges that by making the Work available for download for free to third parties, USDA infringed on Ms. Comet's distribution rights. (*Id.* at 7 (citing 17 U.S.C. § 106(3))). Additionally, Ms. Comet alleges that by displaying the Work, USDA violated Comet's right to display. (*Id.* (citing 17 U.S.C. § 106(5))). Plaintiff seeks to recover actual damages or statutory damages. (*Id.* (citing 17 U.S.C. § 504(c)(1))).

### II. Analysis

The United States argues that it is entitled to summary judgment because Ms. Comet's "claims are entirely barred by the statute of limitations set forth in 28 U.S.C. § 1498(b)." (Def.'s Mot. for Summ. J. at 9–25). In addition, the United States maintains that even if jurisdiction exists, and should the Court find the United States liable, "statutory damages must be limited to $750 as a matter of law." (*Id.* at 25–30). The Court ultimately finds that genuine issues of material fact exist as to whether the United States republished the copyrighted work to its server after May 3, 2020, precluding summary judgment on this issue. The Court also finds the United States' argument regarding minimum statutory damages is premature.

---

(Def.'s Mot. for Summ. J. at 4 ("In March 2018, the USDA used the Work in an AgResearch Magazine article entitled "Going Nuts Over Calories[.]"); Pl.'s Resp. at 5 ("On March 8, 2018, the Government published the Work on its website in an article titled Going Nuts Over Calories[.]"))

[4] (Def.'s Mot. for Summ. J. at 4 ("It is undisputed that no later than March 13, 2018, the USDA uploaded the Work onto its server and web content management system, Umbraco, and published the Work on the Website [.]"); Pl.'s Resp. at 5 ("The Work was "published" again on March 13, 2018, and March 23, 2018[.]") (citing https://www.ars.usda.gov/oc/images/photos/mar18/d2411-1/)).

### A.     Standard of Review

The Court may grant summary judgment if the pleadings, affidavits, and evidentiary materials filed in a case reveal that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). The moving party bears the initial burden to demonstrate the absence of any genuine issue of material fact. The moving party bears the initial burden to demonstrate the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Facts are material if they "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine factual dispute exists when "the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party." *Id.* A party seeking to establish a genuine dispute of material fact must "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." RCFC 56(c)(1)(A).

While "inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion," *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962), summary judgment may still be granted when the party opposing the motion submits evidence that "is merely colorable . . . or is not significantly probative." *Anderson*, 477 U.S. at 251, (internal citation omitted). However, the moving party "need not produce evidence showing the absence of a genuine issue of material fact but rather may discharge its burden by showing . . . that there is an absence of evidence to support the nonmoving party's case." *Dairyland Power Co-op. v. United States*, 16 F.3d 1197, 1202 (Fed. Cir. 1994) (citing *Celotex Corp.*, 477 U.S. at 325). Courts may only grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita, Elec. Indus. Co., Ltd. v. United States*, 475 U.S. 574, 587 (1986) (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). A trial court is permitted, in its discretion, to deny even a well-supported motion for summary judgment, if it believes the case would benefit from a full hearing. *Lowery v. United States*, 167 Fed. Cl. 28, 37 (2023) (citing *United States v. Certain Real & Pers. Prop. Belonging to Hayes*, 943 F.2d 1292 (11th Cir. 1991)).

### B.     Limitations Period Under 28 U.S.C. § 1498(b)

The Court possesses jurisdiction pursuant to § 1498(b), which provides that the "exclusive action" for a claim of copyright infringement against the United States . . . shall be before the United States Court of Federal Claims. 28 U.S.C. § 1498(b). Before the Court may even begin to determine whether Ms. Comet may be entitled to either statutory damages or actual damages, it must first determine whether recovery at all is permitted by § 1498(b).

The relevant language of the statute provides: "[e]xcept as otherwise required by law, no recovery shall be had for any infringement of a copyright covered by this subsection committed more than three years prior to the filing of the complaint[.]" 28 U.S.C. § 1498(b). From the plain language of the statute, recovery is prohibited for infringements that occurred more than three years prior to when a plaintiff files their initial complaint. Further, limitations periods that provide this Court with jurisdiction, along with any exceptions, "must be strictly construed." *Wechsberg v. United States*, 54 Fed. Cl. 158, 163 (2002). Claimants are permitted to sue the United States through a waiver of sovereign immunity, but "any statute that creates a waiver of

5

sovereign immunity must be strictly construed in favor of the government." *Id.* at 164 (quoting *Boyle v. United States*, 200 F.3d 1369, 1372-73 (2000)).

It is also critical for the Court to distinguish between a statute of limitations and a statute of repose. "[A] statute of limitations creates 'a time limit for suing in a civil case, based on the date when the claim accrued.'" *CTS Corp. v. Waldburger*, 573 U.S. 1, 7-8 (2014). "A statute of repose, on the other hand, puts an outer limit on the right to bring a civil action" that is "measured not from the date on which the claim accrues but instead from the date of the last culpable act or omission of the defendant." (*Id.* at 8). Such statutes bar "any suit that is brought after a specified time since the defendant acted . . . even if this period ends before the plaintiff has suffered a resulting injury." *Id.* (quoting Black's 1546 (9th ed. 2009)). Statutes of limitations require that a plaintiff diligently pursue prosecution of known claims, while a statute of repose reflects a "legislative judgment that a defendant should be free from liability after the legislatively determined period of time." *Corner Post, Inc. v. Board of Governors of Federal Reserve System*, 144 S. Ct. 2440, 2452 (2024) (quoting *CTS Corp.*, 573 U.S. at 8-9) (referencing how a statute "which sets a filing deadline of 60 days from the 'entry' of the agency order" constitutes a statute of repose).

Ms. Comet filed her Complaint on May 3, 2023. (*See* Compl.). Section 1498(b) is a statute of repose that will only permit recovery if the United States committed a "culpable act" within the three years prior to the Plaintiff's Complaint. *See Corner Post, Inc.*, 144 S. Ct. at 2452. Applying the plain language of Section 1498(b), any claims of infringement that occurred prior to May 3, 2020, are barred. The parties seem to concede this premise. (Def.'s Mot. for Summ. J. at 13 ("Plaintiff filed the complaint on May 3, 2023, making any claims that accrued prior to May 3, 2020 untimely."); Pl.'s Resp. at 7 ("Section 1498(b), by its plain language, prevents recovery for 'infringement . . . committed more than three years prior to the filing of the complaint.'")). Summary judgment on those claims occurring prior to May 3, 2020 is appropriate. A question remains regarding whether the United States infringed on Ms. Comet's rights after May 3, 2020, which would entitle her to compensation.

1.     **Reproduction**

Ms. Comet alleges that the "USDA reproduced the copyrighted Work in violation of § 106(1) on its Website by uploading the Work to its server[.]" (Compl. at 6). The Copyright Act grants a copyright owner the exclusive right to "reproduce the copyrighted work in copies or phonorecords." 17 U.S.C. § 106(1). The term "copies" is defined as "material objects, other than phonorecords, in which a work is fixed and by any method now known or later developed, and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. § 101. A copy is "'fixed' in a tangible medium of expression when its embodiment in a copy or phonorecord . . . is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration." *Id.* A photographic image is "fixed" in the digital context when "embodied (i.e., stored) in a computer's server (or hard disk, or other storage device). *APL Microscopic, LLC v. United States*, 144 Fed. Cl. 489, 494 (2019). The image stored in the computer is the "copy" of the work for purposes of copyright law. *Id.* (citing *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1160 (9th Cir. 2007)).

Neither party disputes that a defendant infringes the reproduction right when the copy is made. (Def.'s Mot. for Summ. J. at 14 ("[A] defendant only infringes the reproduction right when a copy is made."); Pl.'s Resp. at 9 ("this Court found that when the defendant in that case uploaded the infringing work to its server, 'a copy' was made . . . in accordance with the Copyright Act.")). The problem here stems from conflicting interpretations of the documents.

Plaintiff asserts that "although the Work *was* displayed multiple times within the past three years, the image was also reproduced several times and as late as December 20, 2021." (Pl.'s Resp. at 9) (emphasis in original). On the contrary, the United States argues that the evidence demonstrates "[t]he publication dates for all three USDA URLs shows the latest possible dates by which the Work could have been uploaded to the server . . . ." (Def.'s Mot. for Summ. J. at 14). The United States cites its own discovery responses in which it purports to demonstrate "the latest date[s] by which the Work could have been uploaded to the server." (*Id.* Ex. 19).

| Nos. | URL | First Publication Date | Latest Publication Date that Includes Alleged Work | Alleged Work Takedown Date | Nature of Use of the Alleged Work |
|---|---|---|---|---|---|
| 1 | https://agresearchmag.ars.usda.gov/2018/mar/calories/ | February 28, 2018 | March 23, 2018 | December 20, 2021 | Displayed in AgResearch Magazine article |
| 2 | https://agresearchmag.ars.usda.gov/2012/feb/almonds | Unavailable, see below | January 13, 2015 | December 20, 2021 | Displayed in AgResearch Magazine article |
| 3 | https://www.ars.usda.gov/oc/images/photos/mar18/d2411-1/ | March 8, 2018 | March 13, 2018 | October 19, 2021 | Displayed index webpage for image |

(DEF.'S MOT. SUMM. J. EX 19. AT 14).

To support its position Plaintiff argues:

(1) The United States identified Exhibit L as evidence that the Work was published on March 23, 2018, and "if this is the case, then it must also be true that the image was reproduced again on December 20, 2021." (Pl.'s Resp. at 9)



(PL.'S RESP. EX L.).

(2) The United States identified Exhibit N as evidence that the Work was published on March 23, 2018, and "if this is the case, then it must also be true that the image was reproduced again on December 20, 2021." (Pl.'s Resp. at 9).



(PL.'S RESP. EX N.).

(3) "Exhibit U shows that a new version of the Work was created and fixed in the Government's own server . . ." and is "a new and separate copy of the Work, distinguishable from the 2015 copy." (Pl.'s Resp. at 9–10). Exhibit U shows screenshots allegedly showing the 2015 Article containing the infringing Work, *Infrared Heating: Hot Ideas for Keeping Almonds Safe to Eat*, shown as the "current version" created in 2021. The system appears to prompt the user to select a version to compare with the current version which Ms. Comet alleges "indicat[es] that this is a new and separate copy of the Work, distinguishable from the 2015 copy." (*Id.*).

8

The United States rebuts this assertion by arguing that the December 20, 2021 publications of the 2012 and 2018 Articles were made after the Work had been removed from the webpages. (Defendant's Reply ("Def.'s Reply"), at 3–7, ECF No. 32).

These documents by themselves do not clearly establish that the image itself was not in fact republished. Ms. Comet presents evidence that raises a genuine issue of material fact. (Pl.'s Resp. Exs. L, N, U). Taken together, Exhibits L, N, and U demonstrate that the USDA published articles on various dates within the three-year period prior to Comet's filing, but it is unclear if those publications contained the actual protected work. Based on the record before it, the Court cannot determine whether the image was, or was not, included in a publication that occurred within the three-year period. Accordingly, summary judgment is precluded.

### 2.   Distribution

Title 17, U.S.C. § 106(3) provides a copyright owner with the exclusive right "to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending." The term "distribute" is not defined in the Copyright Act, therefore the Court must determine when a "distribution" occurs.

Ms. Comet initially pled that the United States "distributed Comet's Work in violation of 17 U.S.C. § 106(3) on its Website *by making the Work available* for download for free to third parties . . . ." (Compl. at 7) (emphasis added). On the other hand, the United States contends that "passively hosting an infringing work on the internet does not itself give rise to an infringing act, but rather . . . the infringing act occurs when a defendant made an infringing work available for distribution in its website." (Def.'s Mot. for Summ. J. at 24). Ms. Comet attempts to re-characterize her Complaint through reliance on the Court's analysis in *APL Microscopic, LLC v. United States*, arguing "distribution occurs 'each and every time a computer user accesses the defendant's website displaying the protected work.'" (Pl.'s Resp. at 11 (citing *APL Microscopic*, 144 Fed. Cl. at 499)).

In *APL Microscopic*, APL alleged that the National Aeronautics and Space Administration ("NASA") infringed on APL's rights under 17 U.S.C. § 106. *APL Microscopic*, 144 Fed. Cl. at 498 (J. Damich). Amongst other claims, APL alleged NASA had infringed on APL's rights under § 106(3). *Id.* Judge Damich rejected the United States' argument that distribution occurs when the work is made available and found that Section 106(3) requires "actual dissemination of either copies or phonorecords." *APL Microscopic*, 144 Fed. Cl. at 498.

The Court in *APL Microscopic* considered the Copyright Act's definition of "publication." *Id.* at 497. The Copyright Act defines publication as:

> The distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending. The offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication.

17 U.S.C. § 101. Judge Damich determined "[t]he first sentence of the definition tracks language in § 106(3), making it clear that all distributions are publications" but also found that the inverse "all publications are distributions" is not necessarily true. *APL Microscopic*, 144 Fed. Cl. at 497

(citing *BMG Rights Mgmt. (US), LLC v. Cox Comms., Inc.*, 149 F. Supp. 3d 634, 670 (E.D. VA. 2015)). Additionally, the Court determined the statute's use of the language "offering to distribute" created "an additional category of publications that are not distributions," thus offering no support to the defendant's argument that "making available" constitutes an infringement. *Id.* Under this interpretation, Judge Damich rejected the theory that a distribution occurs when the work is "made available" for distribution and held that "actual dissemination of either copies or phonorecords" was required. *Id.* at 498. The Court subsequently concluded that the United States' upload of the work to its server did not trigger a violation of § 106(3), but rather, any time a user accessed the website the United States wrongfully distributed the work. (*Id.*). Although the Court is not bound by the decisions of other judges of this Court, such rulings may be persuasive. *E.g.*, *Doe v. United States*, 95 Fed. Cl. 546, 572 (2010). Here, the Court declines to apply the logic of *APL Microscopic* to these circumstances.

As pointed out in *Tom Hussey Photography, LLC v. BDG Media, Inc.*, *APL Microscopic* primarily relied on *BMG* in reaching its conclusion; however, *BMG* did not address the statute of limitations. 2020 WL 7481770 at *3 n.2 (D. Del. Dec. 18, 2020); *see also APL*, 144 Fed. Cl. at 496–98. This presents a significant concern in *APL's* analysis, as § 1498(b) is a statute of repose that specifically bars "any suit that is not brought after a specified time since the defendant acted." *CTS Corp.*, 573 U.S. at 8; *see also Corner Post, Inc.*, 144 S.Ct. at 2452 (highlighting Congressional intent when creating a limitations period beginning with defendant's action). Therefore, having incorporated the restrictions set forth in § 1498(b), the United States' most recent culpable act is determinative when establishing the applicable limitations period.

Furthermore, the Supreme Court has made clear that "separately accruing harm should not be confused with harm from past violations that are continuing." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671 n.6 (2014). Under this guidance, the mere fact that a particular photo remained online does not trigger a separate act from which a new limitations period begins to run. *Id.* (citing *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 190 (1997)) (stating that each new act must "harm [the plaintiff] over and above the harm that the earlier acts caused"). Accordingly, the Court rejects Ms. Comet's argument that distribution occurs each and every time a computer user accesses the USDA's website, and instead finds that infringement of the right of public distribution under § 106(3) occurred when the Work was made available.

Ms. Comet premises liability under § 106(3) based on how many times third-party users accessed USDA's website. This mistakes third-party action for culpable acts of the United States and she has presented no evidence that the United States has engaged in any acts of distribution after May 3, 2020. *Cohen v. United States*, 98 Fed. Cl. 156, 170 (2011) (citing *Boyle*, 200 F.3d at 1372) (holding the United States may only be found liable for its own infringements or those of a third party acting with government authorization or consent). The United States is correct as to this argument and has not violated Ms. Comet's distinct right of distribution.

### 3. Display

The Copyright Act also grants a copyright owner the exclusive rights to "display the copyrighted work publicly." 17 U.S.C. § 106(5). "To 'display' a work means to show a copy of it, either directly or by means of a film, slide, television image, or any other device or process[.]"

*Id*. In relevant part, 17 U.S.C. § 101 states that to "perform or display a work 'publicly'" means to:

> [T]ransmit or otherwise communicate a performance or display of the work … to the public, by means of any device or process, whether the members of the public capable of receiving the performance or display receive it in the same place or in separate places and at the same time or at different times.

Ms. Comet argues that the United States displayed her Work in violation of § 106(5) by placing the Work on the USDA's website. (Compl. at 7). Furthermore, Ms. Comet asserts her claims are timely pursuant to § 1498(b) because "the Work was viewed, and therefore displayed to third-party users, on the Government's webpages *at least* until December 20, 2021. (Pl.'s Resp. at 13) (emphasis in original). The United States opposes this position, arguing that "we must look to when the defendant's infringing conduct occurred." (Def.'s Mot. for Summ. J. at 20). For reasons previously discussed in the analysis of § 106(3), the Court agrees with the United States argument.

In *APL Microscopic*, Judge Damich relied primarily on a 9th Circuit decision that considered "whether an internet service provider infringed on the plaintiff's display rights by storing thumbnail versions of copyrighted images on its server and communicating those images to its users." *APL Microscopic*, 144 Fed. Cl. at 499 (citing *Perfect 10, Inc.*, 508 F.3d. at 1155-61). The Court in *Perfect 10* found the plain language of 17 U.S.C. § 101 establishes that "a person *displays* a photographic image by using a computer to fill a computer screen with a copy of the photographic image fixed in the computer's memory." *Id.* (emphasis added). Following this guidance, Judge Damich concluded that NASA infringed on APL's right to display each time a user viewed NASA's webpage. *Id.* Under this interpretation, each viewing constituted a new infringement that started a new limitations period pursuant to 28 U.S.C. §1498. *Id.* (finding infringements from the initial display in 2004 up until the date that the complaint was filed in 2018). The Court disagrees.

As discussed above, *APL Microscopic*'s reliance on *Perfect 10* does not address the limitations period established under § 1498(b); this presents identical shortcomings to *BMG*. The Supreme Court has made clear Congress "kn[ows] how to depart from the traditional rule to create a limitations period that begins with the defendant's action instead of the plaintiff's injury." *Corner Post, Inc.*, 144 S. Ct. at 2452; *see supra* pp. 6, 10.

Comet argues that the evidence provided demonstrates that "the Work was viewed[] and therefore displayed to third-party users" until December 20, 2021. (Pl.'s Resp. at 13). Under this theory, each view of the USDA's webpage "starts a new limitations period . . . [and] Ms. Comet's claims are timely," but this is contrary to the legislative judgment exercised by Congress in creating a statute of repose as explained by the Supreme Court. *See* Discussion *supra* Section II. B. To reach Ms. Comet's understanding of § 1498(b), the Court would need to make an inferential step beyond § 1498(b) to find liability. The Court declines to do so. Ms. Comet has produced no evidence that the United States engaged in any acts that infringed on her right of display after May 3, 2020.

C.      *Statutory Damages*

When the United States infringes on a copyright, 28 U.S.C. § 1498(b) provides "for recovery of [the copyright owner's] reasonable and entire compensation as damages for such infringement as damages for such infringement, including the minimum statutory damages as set forth in section 504(c) of title 17, United States Code." 28 U.S.C. § 1498(b). Section 504(c) of the Copyright Act addresses the ability of a copyright owner, in actions between private parties, to elect an award of statutory damages instead of actual damages:

> [T]he copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, . . . in a sum of not less than $750 or more than $30,000 as the court considers just.

17 U.S.C. § 504(c)(1).

The United States argues that "any award of statutory damages must be limited to $750 pursuant to the plain meaning of 'the minimum statutory damages' in § 1498(b) and because there is only one work at issue." (Def.'s Mot. for Summ. J. at 30). The legal issues surrounding statutory damages are premature. Ms. Comet has not elected an award of statutory damages instead of actual damages. (*See, e.g.,* Compl. at 8 (stating Comet intends to seek "actual *or* statutory damages" (emphasis added)); Compl. at 10 (requesting "[d]efendant be required to pay Plaintiff her actual or statutory damages, as provided in 17 U.S.C. § 504)). Should Ms. Comet's copyright infringement claim succeed, Comet may elect an award of statutory damages "at any time before final judgment is rendered." 17 U.S.C. § 504(c)(1); *see* U.S.C. 1498(b). Until she does so, the Court declines to decide this issue. *See Cohen v. United States*, 100 Fed. Cl. 461, 485 (2011) (declining to decide the statutory minimum issue prior to plaintiff's election).

### III.     Conclusion

The Court **DENIES** the United States' Motion for Summary Judgment and **DENIES** the United States' Motion for Partial Summary Judgment, (ECF No. 27). While the Court finds that the United States did not violate Ms. Comet's right to distribute or display, a genuine issue of material fact exists as to whether the United States violated Ms. Comet's right to reproduce in violation of 17 U.S.C. § 106(1). Based on the findings therein, Ms. Comet is precluded from entering any further evidence pertaining to her arguments under §§ 106(3) and 106(5) of the Copyright Act. Further, any finding as to statutory damages is premature.

The parties shall meet and confer and file a Joint Status Report proposing redactions to this memorandum opinion within fourteen (14) days of its entry to allow the Court to file a public version of the opinion.

The Court hereby adopts the following Pre-Trial Schedule:

| Event | Deadline |
| --- | --- |
| Initial meeting of counsel to exchange exhibit and witness lists, identify deposition transcripts, and establish stipulation of agreed facts | September 10, 2024 |
| Initial Pre-trial Conference | September 12, 2024 11:00 AM ET |
| Plaintiff's Witness List and Exhibit List | September 16, 2024 |
| Defendant's Witness List and Exhibit List | September 16, 2024 |
| Defendant's Objections to Plaintiff's Witness List and Exhibit List | September 30, 2024 |
| Plaintiff's Objections to Defendant's Witness List and Exhibit List | September 30, 2024 |
| Plaintiff's Reply to Objections to Witness List and Exhibit List | October 14, 2024 |
| Defendant's Reply to Objections to Witness List and Exhibit List | October 14, 2024 |
| Plaintiff's Pretrial Memorandum, not to exceed 25 pages | October 14, 2024 |
| Motions *in limine* Filing Deadline for all Parties | October 21, 2024 |
| Defendant's Pretrial Memorandum, not to exceed 25 pages | October 28, 2024 |
| Responses to Motions *in limine* | November 4, 2024 |
| Replies to Motions *in limine* | November 11, 2024 |
| Meeting of Counsel | November 15, 2024 |
| Joint Stipulation of Facts | November 18, 2024 |
| Joint Statement of Good Faith | November 18, 2024 |
| Joint Exhibit List, filed in CM/ECF | November 18, 2024 |
| Final Pre-trial Conference | December 2, 2024 |
| Order of Witnesses, filed in CM/ECF | December 6, 2024 |
| Trial | December 9, 2024 9:00 AM ET |

**IT IS SO ORDERED.**



s/     David A. Tapp
DAVID A. TAPP, Judge